UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,

v.

MICHAEL JOHN MODENA,

       Defendant.

_____/

Case No. 1:09-cr-37

HON. JANET T. NEFF

**OPINION**

Pending before the Court is defendant's Motion to Suppress Evidence and Dismiss Indictment, as supplemented (Dkts 20 & 22). For the reasons that follow, the Court denies defendant's motion.

I. FACTUAL BACKGROUND

Defendant Michael John Modena is charged in this case with Felon in Possession of a Firearm, 18 U.S.C. § 922(g)(1), 18 U.S.C. § 924(a)(2); and Prohibited Person (domestic violence misdemeanant) in Possession of a Firearm, 18 U.S.C. § 922(g)(9), 18 U.S.C. § 924(a)(2). The charges arise from evidence obtained during an October 23, 2008 search. The search warrant sought and received by Michigan State Police Detective/Sergeant Richard Miller directed Miller to search 6727 Wood Road in Norton Shores, Michigan for evidence of any false-lien filings defendant filed over a three-month period between April 25 and June 9, 2008 against various individuals identified

in the warrant. *See* MICH. COMP. LAWS § 440.9501(6) (making it a felony offense for a person to knowingly or intentionally file a false or fraudulent financing statement with the Secretary of State).

Miller conducted the search on October 23, 2008. The Return to Search Warrant tabulated the following items seized from parts of the residence:

- 9 millimeter pistol
- bolt action rifle with scope
- computer hard drive
- approximately 12 computer diskettes
- approximately 12 yellow envelopes
- No Trespassing sign – notice to government agents
- red leather case – appointment books – letter correspondence, legal papers

The following items were tabulated as seized from a "92 Pontiac":

- white plastic bag – articles, correspondence, documents, UCC filings
- digital recorder, disposable camera
- 3-ring binder of UCC filings
- yellow envelope marked Ingham County case
- Compaq computer hard drive

The Return to Search Warrant also indicates that 14 gold coins were found in the "auto" and "held for safe keeping."

A Complaint was issued on January 22, 2009, charging defendant with the two aforementioned counts. On February 24, 2009, counsel appointed for defendant filed a Motion to

Suppress Evidence and Dismiss Indictment (Dkt 20).[1] A supplement to the motion was filed on March 4, 2009 (Dkt 22). The government filed its response April 6, 2009 (Dkt 37). A final pretrial conference and jury trial were originally scheduled for June 9, 2009 and June 16, 2009, respectively; however, these dates were adjourned to accommodate the scheduling of a competency evaluation and hearing. Following the hearing, this Court entered an Order of Competency on September 29, 2009 and re-noticed the final pretrial conference and trial for November 9, 2009 and November 17, 2009, respectively. Defendant's pending motion to waive assistance of counsel and proceed pro se has also since been granted by the magistrate judge, and defendant's court-appointed counsel now serves on a "stand-by basis only."

## II. ANALYSIS

### A. Law

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Const. Amend. IV.

"A warrant will be upheld if the affidavit provides a 'substantial basis' for the issuing magistrate to believe 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Smith,* 510 F.3d 641, 652 (6th Cir. 2007) (quoting *Illinois v. Gates,* 462 U.S. 213, 238 (1983)). Rather than a rigid test, the reviewing court is to apply a

---

[1] Defendant also petitioned the Sixth Circuit Court of Appeals for a writ of mandamus on the search warrant issue, which the Sixth Circuit denied May 11, 2009 (Dkts 19, 41, 43).

"totality-of-the-circumstances" approach. *United States v. Higgins,* 557 F.3d 381, 389 (6th Cir. 2009) (citing *Gates,* 462 U.S. at 238-39).

"An issuing judge's findings of probable cause should be given great deference by the reviewing court and should not be reversed unless arbitrarily exercised." *Higgins,* 557 F.3d at 389. "[A]fter-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of de novo review." *Gates,* 462 U.S. at 236. "[W]here these circumstances are detailed, where reason for crediting the source of the information is given, and when a magistrate has found probable cause, the courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner." *Id.* at 289 (quoting *United States v Ventresca,* 380 U.S. 102, 108-09 (1965)).

Indeed, "the fact that a Fourth Amendment violation occurred – i.e., that a search or arrest was unreasonable – does not necessarily mean that the exclusionary rule applies." *Herring v. United States,* ___ U.S. ___; 129 S. Ct. 695, 700 (2009). "To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *Id.* at 702.

An evidentiary hearing on a motion to suppress is required "only if the motion is sufficiently definite, specific, detailed, and non-conjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question." *United States v. Abboud,* 438 F.3d 554, 577 (6th Cir. 2006).

B. Application

Defendant moves to suppress the evidence against him on essentially three bases: that the search warrant authorizing the seizure was insufficient because it (1) relied on hearsay, (2) relied

on stale information, and (3) was overly broad in scope. In other words, defendant disagrees with the legal conclusion that the facts in the affidavit were sufficient to support probable cause to conduct the search for evidence. This type of disagreement is not resolved through an evidentiary hearing. *See Abboud, supra.* Instead, this Court has carefully reviewed the parties' written submissions and accompanying exhibits to determine whether defendant's arguments support the sanction of exclusion of the evidence or dismissal of the charges against him. The Court finds defendant's arguments lack merit.

1. *Hearsay*

Defendant argues that the search warrant authorizing the seizure of the evidence was not based on the personal knowledge of the affiant but on hearsay information obtained from his ex-wife, Kimberly Leer-Modena. Mot. 5-7. Defendant opines that Leer-Modena is an informant whose reliability was not known to or attested by the affiant and that the affidavit did not state facts that would allow a judicial determination that Leer-Modena is reliable.

According to the government, defendant has greatly overstated the significance of the information provided by his ex-wife. The government opines that the limited information Leer-Modena provided was inherently reliable under the circumstances, circumstances that included (a) the fact that defendant's ex-wife was not an anonymous source but a named witness in the affidavit; (b) public records noted in the affidavit that corroborated the ex-wife's assertion that she and defendant had resided together at 6727 Wood Road before they separated; and (c) common sense corroborated her assertion that she vacated the residence when the marriage became dysfunctional. Last, the government points out that "the mere possibility that defendant's wife might have wished him ill as result of a rancourous divorce is not enough to render her information unreliable." For

5

this proposition, the government cites *United States v. Czuprynski,* 46 F.3d 560, 564-65 (6th Cir. 1995), where the Sixth Circuit Court of Appeals held that the personal motive of a fired employee to harm her employer did not compel a finding of unreliability.

Of the 24 paragraphs in the affidavit at issue here, only three contain information attributed to defendant's ex-wife: paragraphs 13, 17, and 18. Paragraphs 17 and 18 supplied no information about 6727 Wood Road. Paragraph 17 states that defendant was engaged in a business named the "Legal Beagle" at another address. Paragraph 18 states that defendant stored his firearms and other possessions at his parents' home.

Paragraph 13 states that Leer-Modena vacated the 6727 Wood Road residence upon separating from defendant but that defendant continued to reside there. This information was corroborated by defendant's correspondence to Miller, which demonstrated that defendant claimed the Wood Road home as his residence. Aff. ¶¶ 14-16.

"It is enough, for purposes of assessing probable cause, that 'corroboration through other sources of information reduced the chances of a reckless or prevaricating tale,' thus providing 'a substantial basis for crediting the hearsay.'" *Gates,* 462 U.S. at 244-45 (quoting *Jones v. U.S.,* 362 U.S. 257, 269 (1960)). The information defendant's ex-wife contributed in paragraph 13 was corroborated by Miller, which reduced the chances of a "reckless or prevaricating tale" and provided a substantial basis for crediting the hearsay.

2. *Staleness*

Defendant next argues that the search warrant that authorized the seizure of the evidence was based on stale information. Mot. 7-8. Defendant argues that because the information his ex-wife contributed was no more recent than November 2007 (apparently defendant's reference to the time

6

frame when Leer-Modena helped defendant move office equipment [Aff. ¶ 17]), any probable cause had grown stale by the time the search warrant was obtained in October 2008. Defendant also asserts that "[t]here was no information that the Defendant was participating in any on-going criminal activity," given that the affidavit did not assert that he had filed additional false liens after the summer of 2008. *Id.* 8. In this regard, defendant opines that the search was "unnecessary" because he had already admitted filing the liens that were the subject of the investigation. *Id.*

In response, the government proffers two reasons that defendant's staleness argument fails. First, the government argues that defendant himself cured any staleness that might otherwise have arisen between November 2007 and July 2008. Specifically, in response to a visit by the affiant to 6727 Wood Road on July 17, 2008, when the affiant attempted to interview defendant and left his Michigan State Police business card, defendant thereafter sent the affiant letters complaining about the visit and alleging trespass (Aff. ¶ 15). In addition to this personal declaration of continued occupancy of the Wood Road residence by defendant, the Michigan State Police observed defendant residing at the premises (Aff. ¶ 16).

The government opines that the affidavit indicated no reason to think that defendant had abandoned either his retaliatory purpose or his false-lien tactics in the few months between June 9, 2008 (when defendant filed his most recent lien) and October 21, 2008 (the date on which Miller applied for the search warrant). The government opines that the affidavit instead provided ample reason to believe that defendant would have held on to his "legal papers" and that he would not have discarded the evidence related to the lien filings.

Second, citing *United States v. Sandridge,* 385 F.3d 1032, 1036 (6th Cir. 2004), the government argues that defendant's staleness argument fails because false-lien filing is in the nature

of an ongoing course-of-conduct offense (like operating a vehicle without a license), such that it takes longer for information to become stale.

As for defendant's "necessity" argument, the government opines that defendant is "entirely off-point," that whether additional investigation is warranted is a matter reserved for the plenary discretion of the executive branch. The government posits that courts decide whether executive officers have established probable cause to conduct a search for evidence within a Fourth Amendment area, not whether conducting a search is necessary to an investigation.

Applying a totality-of-the-circumstances approach to reviewing the statements in the affidavit, the Court is persuaded by the government's argument that defendant's actions in July 2008 and the officer's observations in July 2008 cured any staleness problem that may exist. Moreover, the Court notes that because the information attributed to defendant's ex-wife did not <u>alone</u> contribute in a meaningful way to establishing probable cause to search, it is not consequential that the information was acquired from her in November 2007.

### 3. *Overbreadth*

Last, defendant argues that the affidavit was overly broad and amounted to a request for a general search warrant inasmuch as the affidavit failed to state with particularity the premises to be searched. Mot. 9-12. Defendant asserts that the warrant authorized the search of the second home located to the south of the intersection of two roads, but that his residence was, in fact, the <u>third</u> home to the south of that intersection. Defendant also points out that the warrant incorrectly describes "Norton Shores" as a city rather than a township. In the supplement to his motion, defendant adds that the officers seized evidence in an area not authorized by the search warrant, to wit, a "92 Pontiac."

8

The government argues that the minor errors in the description of the premises in the affidavit and the warrant were not capable of, let alone reasonably likely to, result in a search of the wrong premises. The government asserts that it has evidence to show that the 1992 Pontiac belonged to defendant and was parked within the curtilage of defendant's residence, to wit, on a driveway exclusive to defendant's residence in front of a garage structure that was attached to the residence. Under *United States v. Leon,* 468 U.S. 897 (1984), the government argues that even if the warrant is defective on this basis, suppression of the evidence would be inappropriate because the officers executed the search in good faith and with reasonable reliance on a facially proper warrant.

Turning first to the description in the warrant of the "residential structure," the seminal case is *United States v. Durk,* 149 F.3d 464 (6th Cir. 1998). There, the Sixth Circuit Court of Appeals held that "[t]he test for determining whether a search warrant describes the premises to be searched with sufficient particularity is not whether the description is technically accurate in every detail, but rather whether the description is sufficient to enable the executing officer to locate and identify the premises with reasonable effort, and whether there is any reasonable probability that another premises might be mistakenly searched." *Id.* at 465 (internal quotes and citations omitted). Factors relevant to making this determination include whether a place is identified by unique landmarks, whether the occupant's name is specified, and whether the executing officers are familiar with the premises. *Id.* at 466. The Court in *Durk* upheld the search of the residence on the facts before it, notwithstanding the fact that the warrant contained two errors: (1) the transposition of the house numbers from 4216 to 4612; and (2) the description of the defendant's house as "3 houses to the east of Grandview," when in fact it was three houses to the <u>west</u> of Grandview.

9

In contrast, in *Knott v. Sullivan,* 418 F.3d 561, 570 (6th Cir. 2005), the Court examined the factors from *Durk* and concluded that the inaccuracies in the search warrant for an automobile and the supporting affidavit rendered the search of the automobile invalid. The panel stated: "we are not presented with the mere transposition of digits in a license plate or vehicle identification number or a minor mistake in the description of one portion of the vehicle, but rather the wholesale inclusion of another vehicle's make, model, year, license plate number, and vehicle identification number. Indeed, the vehicle described in the search warrant was not simply just another vehicle, but rather one owned by the father of a person suspected of committing a double murder. Given these circumstances, there was more than a reasonable probability that the incorrect vehicle could have been searched."

Applying *Durk* to the facts at bar, any confusion arising from the second home/third home and city/township inaccuracies in the affidavit was more than compensated for by the precise physical description of the structure, the use of a numbered street address, and the fact that Miller had previously been to the house. "The knowledge of the executing officers in this case is a factor which may cure any insufficiencies in the search warrant's description of the premises." *United States v. Brown,* 49 F.3d 1162, 1169 (6th Cir. 1995). Given these compensating facts, there was not a reasonable probability that another location could have been mistakenly searched because of the two inaccuracies contained in the warrant.

Defendant's supplemental claim about the impropriety of the search of the car is not helpful to him in this case. The guns that form the basis of the federal complaint against him were found in the residence, not the car. Exclusion of the evidence found during the search of the car would not compel dismissal of the firearms-possession charges.

## III. CONCLUSION

In sum, defendant's hearsay, staleness, and overbreadth arguments do not demonstrate that the search warrant authorizing the seizure was insufficient to support probable cause to conduct a search for evidence under the Fourth Amendment. Consequently, the Motion to Suppress Evidence and Dismiss Indictment, as supplemented (Dkts 20 & 22), is denied.

An Order consistent with this Opinion will issue.

DATED: October 21, 2009 /s/ Janet T. Neff
JANET T. NEFF
United States District Judge